# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM C. BOSSART and | § | |
| MARILYNN W. BOSSART, | § | |
|     Debtors/Appellants, | § | **CIVIL ACTION NO. H-08-0463** |
| | § | |
| v. | § | Bankruptcy Case No. 05-34015 |
| | § | Adversary No. 06-3540 |
| KENNETH R. HAVIS, Trustee, | § | |
|     Appellee. | § | |

## MEMORANDUM AND ORDER

Debtors/Appellants William C. And Marilynn Bossart appeal from the United States Bankruptcy Court's December 21, 2007 "Memorandum Opinion on Trustee's First Amended Complaint" and the accompanying Order [BR Doc. # 56]. Appellants also assert that the Bankruptcy Court erred by denying their Motion to Amend Findings and Conclusions. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Having considered the parties' briefing,[1] the designated bankruptcy record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's decision.

---

[1]    *See* Brief of Appellants [Doc. # 8]; Appellee's Brief [Doc. # 9]; Appellants' Reply Brief [Doc. # 10].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Bossarts, on the advice of their attorney Harlan Guettermann, transferred $108,415.37 to AIG SunAmerica ("AIG") to purchase an annuity. The first transfer, $102,915.37, was made on March 16, 2005. The second transfer, $5,500.00, was made on March 18, 2005.

On March 18, 2005, the Bossarts filed a Chapter 7 bankruptcy petition. They listed the annuity in the amount of $108,417.37 as an asset for which they claimed an exemption pursuant to Texas Insurance Code § 1108.051. The Bankruptcy Trustee ("Trustee"), Kenneth Havis, did not object to the claimed exemption for the AIG annuity.

On August 24, 2006, the Trustee filed a Complaint against AIG to recover the $108,417.37 as a fraudulent transfer pursuant to 11 U.S.C. § 548. *See* Complaint [BR Doc. # 1]. On October 18, 2006, AIG filed an Answer and Counterclaim in Interpleader seeking leave to deposit the allegedly fraudulent transfer into the Registry of the Court ("Registry") and to be dismissed from the adversary proceeding. *See* Answer and Counterclaim in Interpleader [BR Doc. # 10]. On October 23, 2006, the Bossarts filed a Motion to Intervene [BR Doc. # 14] which was denied without prejudice. *See* Order [BR Doc. # 17].

On November 21, 2006, the Bankruptcy Judge issued an "Agreed Order" [BR Doc. # 25] allowing AIG to deposit "the accumulated cash value" of the annuity into the Registry and, after the funds were deposited, dismissing AIG with prejudice and releasing AIG from liability arising out of or relating to the deposited funds or the annuity.

On November 27, 2006, the Bossarts filed a "Second Motion to Intervene and Motion to Reconsider Agreed Order" [BR Doc. # 27]. The Bankruptcy Judge granted leave for the Bossarts to intervene as defendants in the adversary proceeding, but denied the request to vacate the Agreed Order. *See* Order [BR Doc. # 28]. The Bossarts then filed their Answer [BR Doc. # 34] in the adversary proceeding. The parties filed cross-motions for summary judgment [BR Docs. # 35 and # 38]. On May 11, 2007, the Bankruptcy Judge denied both summary judgment motions and scheduled the case for trial. The Bankruptcy Judge noted specifically that the annuity was exempt, but that the Trustee was seeking to recover the funds fraudulently transferred to AIG rather than to recover the annuity itself. *See* Order [BR Doc. # 47], p. 2.

Following trial, the Bankruptcy Judge issued its Memorandum Opinion on Trustee's First Amended Complaint ("Opinion") [BR Doc. # 56].[2] The Bankruptcy Judge found that the transfer to AIG was fraudulent,[3] allowed the Trustee to avoid the transfer, and allowed the Trustee to recover the funds "currently held in the [Registry], plus any accrued interest." *See* Opinion, p. 40. The Bossarts filed a Motion to Amend Findings and Conclusions and Motion to Alter or Amend Judgment ("Motion to Amend") [BR Doc. # 60], arguing that the Bankruptcy Judge failed to address certain issues they had raised during this adversary proceeding. The Bankruptcy Judge denied the Bossarts' Motion to Amend, addressing the amount of the judgment and stating that the "Defendants raised the other points at trial, and the Court made rulings on these points in the Trustee's favor." *See* Order [BR Doc. # 62], p. 2.

On January 18, 2008, the Bossarts filed a timely Notice of Appeal [BR Doc. # 64]. The appeal has been fully briefed and is now ripe for decision.

## II. **STANDARD OF REVIEW**

The Court reviews a bankruptcy judge's conclusions of law *de novo* and findings of fact under the "clearly erroneous" standard. *Barron v. Countryman*, 432

---

[2] The Trustee had filed a First Amended Complaint [BR Doc. # 42] on January 22, 2007.

[3] Appellants do not challenge on appeal the Bankruptcy Court's decision that the transfer to AIG was fraudulent.

F.3d 590, 594 (5th Cir. 2005). Mixed questions of law and fact are reviewed *de novo*. *In re Quinlivan*, 434 F.3d. 314, 318 (5th Cir. 2006); *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 265 (5th Cir. 2005).

A factual finding is clearly erroneous "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (internal quotations and citation omitted). Stated differently, a "factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). "As long as there are two permissible views of the evidence," the Bankruptcy Court's "choice between competing views" is not clearly erroneous. *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion. *See In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002). A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

This Court "may affirm if there are grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re*

*Cueva*, 371 F.3d 232, 236 (5th Cir. 2004) (quoting *Matter of Besing*, 981 F.2d 1488, 1494 (5th Cir.), *cert. denied*, 510 U.S. 821 (1993)).

## III.   ANALYSIS

Appellants raise seven issues on appeal. They argue (1) that the § 548(c) defense applied because AIG was an innocent transferee who gave value in exchange; (2) that the Trustee could not take their exempt property; (3) that the Trustee failed to satisfy his burden of proof for an interpleader action; (4) that the Trustee's claim was "impossible" under Texas law; (5) that the Trustee was estopped to pursue a fraudulent transfer adversary proceeding because he did not object to the Debtors' claimed exemptions; (6) that the Bankruptcy Court erred in denying their Motion to Amend Findings and Conclusions to address the previous five issues; and (7) that the amount of the judgment exceeded the Trustee's claim.

### A.   The § 548(c) Defense

Appellants argue that § 548(c) bars the Trustee's § 548(a)(1) claim. Section 548(c) provides that "a transferee . . . that takes for value and in good faith" may retain the transfer "to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . .." 11 U.S.C. § 548(c). In this case, AIG was the

transferee, and AIG chose not to assert the § 548(c) defense.[4]  Consequently, a § 548(c) defense was not tried or otherwise properly presented to the Bankruptcy Court for decision.

### B. Recovery of Fraudulent Transfer From Exempt Property

Appellants argue that the annuity is exempt property and, therefore, the Trustee cannot recover it through this adversary proceeding.  The Trustee, however, did not seek to obtain the exempt annuity.  Instead, the Trustee sought pursuant to § 548 to recover as a fraudulent transfer the amount transferred by Debtors to AIG to purchase the annuity, plus interest.  *See* Complaint [BR Doc. # 1], pp. 2, 4; First Amended Complaint [BR Doc. # 42], pp. 2, 5.  The Bankruptcy Court correctly addressed this issue in the Order [BR Doc. # 47] denying the motions for summary judgment.

### C. Interpleader Standards

Appellants argue that the Bankruptcy Court erred by failing to require the Trustee to establish all elements necessary to prevail on an interpleader action.  The Trustee's claim was not an interpleader action.  It was an adversary proceeding brought pursuant to § 548 to avoid and recover a fraudulent transfer.  The Bankruptcy

---

[4]  Debtors argued in their Second Motion to Intervene [BR Doc. # 27] that they should be permitted to intervene because AIG was entitled to assert the § 548(c) defense, but failed to do so.  The Bankruptcy Court allowed the intervention, but Debtors did not assert a § 548(c) defense in their Answer.  *See* Answer [BR Doc. # 34].

Court carefully and completely analyzed the Trustee's proof on each element of the § 548(a)(1) claim.[5] The Trustee was not asserting an interpleader claim and, as a result, was not required to satisfy interpleader elements.

### D.  Impossibility of Trustee's Claim

The Trustee alleged that the transfer of the annuity premium was fraudulent because it was "part of a concerted scheme by the Debtors to hinder, delay or defraud creditors by attempting to maximize their exemptions and then immediately filing a chapter 7 case." *See* First Amended Complaint [BR Doc. # 42], p. 2. Appellants argue that the Trustee's § 548 claim is "impossible" because it is based on the allegation that the Debtors were "using Texas exemptions to defraud creditors" and an annuity purchased with the intent to defraud creditors is not exempt pursuant to § 1108.053 of the Texas Insurance Code. *See* Appellants' Brief [Doc. # 8], p. 18. Therefore, according to Appellants, the annuity is not exempt and they could not have "maximized their exemptions" by using the annuity to defraud creditors. The foundation of this argument is the incorrect assertion that the Trustee's § 548 claim was based on the allegation that Debtors were "using Texas exemptions to defraud creditors." The Trustee actually alleged that the transfer of the annuity premium was

---

[5]  Indeed, the Bankruptcy Judge determined that the Trustee satisfied his burden of proof as to the § 548(a)(1)(A) theory and not as to the § 548(a)(1)(B) theory.

fraudulent because it was "part of a concerted scheme by the Debtors to hinder, delay or defraud creditors by ***attempting to maximize*** their exemptions." *See* First Amended Complaint [BR Doc. # 42], p. 2 (emphasis added).  Whether the annuity is exempt is irrelevant to the Trustee's claim that the premium payments transferred by Debtors to AIG was fraudulent because it was part of a scheme to defraud creditors by "attempting" to maximize exemptions.  There was nothing "impossible" about the Trustee's § 548 claim.  Appellants' argument to the contrary is without merit.

**E.    Estoppel**

Appellants argue that the Trustee is estopped to pursue the § 548 claim because he did not object to the Appellants' claim that the annuity was exempt.  Appellants state that the "Trustee did not object to the exemption of the annuity, so he is forever estopped and the annuity [] is no longer in the 'pool of assets.'" *See* Appellants' Brief [Doc. # 8], p. 21.  Appellants' estoppel argument fails for at least two reasons.  First, the case relied on by Appellants, *In re Montgomery*, 80 B.R. 385 (Bankr. W.D. Tex. 1987),[6] does not support their argument that failure to object to a claimed exemption estops the Trustee from later asserting a fraudulent transfer claim pursuant to § 548. Moreover, Appellants' estoppel argument is based on the incorrect assertion that the

---

[6]     The issue presented in *In re Montgomery* involved the application of estoppel principles to a creditor's failure to object to the debtor's claimed exemptions, and the Bankruptcy Court held that the estoppel principles did not apply.

Trustee in the § 548 adversary proceeding sought to bring the annuity into the bankruptcy estate's "pool of assets." As has been made abundantly clear throughout this record, the Trustee sought to avoid the fraudulent transfer of the premium from Debtors to AIG. The failure to object to the claimed exemption for the annuity does not estop the Trustee's subsequent § 548 claim.

### F.     Adequacy of Bankruptcy Court's Decision

Appellants assert that the Bankruptcy Court's findings of fact and conclusions of law failed to comply with Rule 52 of the Federal Rules of Civil Procedure. Rule 52 requires the trial court to "find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52. Appellants complain that the Bankruptcy Court's forty-page findings of fact and conclusions of law failed to address the five issues discussed above.

The only claim before the Bankruptcy Court was the Trustee's § 548 claim to avoid and recover a fraudulent transfer of the premium payments, plus interest, from Debtors to AIG. The Bankruptcy Court made extensive findings of fact and conclusions of law addressing each element of each aspect of the Trustee's claim. This adequately satisfies the requirements of Rule 52.

### G.     Amount of Judgment

Appellants argue that the amount of the judgment is mathematically incorrect because the Trustee requested only the premium amount ($108,415.37), but the judgment allowed the Trustee to recover the full amount in the Registry ($129,897.33). Contrary to Appellants' argument, however, the Trustee specifically requested in the original Complaint to recover the premium "plus interest" and in the First Amended Complaint to recover "the funds from the Court's registry . . .." *See* Complaint [BR Doc. # 1] at 4; First Amended Complaint [BR Doc. # 42] at 5.

Appellants argue alternatively that the Trustee's recovery should be limited to the premium payment plus the statutory interest rate of 3.20%, for a total of $113,051.94. Appellants claim that they are entitled to the remaining $16,845.39. Although the Trustee stated during the adversary proceeding that he was entitled to recover prejudgment interest at the statutory rate, the Trustee did not limit its recovery to that amount and, indeed, clearly requested in the First Amended Complaint that it receive "the funds from the Court's registry."

The Trustee sought to recover the premium payments as fraudulent transfers, plus accrued interest. There is nothing in the record to indicate that the funds in the Court's Registry represented anything other than the fraudulent transfers plus the interest that accrued before and after they were deposited into the Registry. The amount of the judgment represented that amount and is affirmed.

## IV.  CONCLUSION AND ORDER

The Bankruptcy Court's decision is correct and is affirmed in all respects. Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's December 21, 2007 "Memorandum Opinion on Trustee's First Amended Complaint" and "Order Regarding Trustee's First Amended Complaint" [BR Doc. # 56] are **AFFIRMED**.  The Court will issue a separate final Order.

SIGNED at Houston, Texas, this **14th** day of **April, 2008.**

_____
Nancy F. Atlas
United States District Judge